# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert M. Gardner,                                     Civil No. 05-957 (DSD/SRN)


                    Plaintiffs,

v.                                          **REPORT AND RECOMMENDATION**

Dean A. Monco; John S.
Mortimer; Wood, Phillips,
Katz, Clark & Mortimer,
Attorneys at Law; Stayhealthy,
Inc.; John Collins;

                    Defendants.

---

Robert M. Gardner, Esq., pro se

Mary A. Rice, Esq., on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiff's Motion to Remand (Doc No. 6) and Defendants' Motion to Dismiss (Doc. No. 2). These matters are properly before the Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

## I.      BACKGROUND

The facts as alleged by Plaintiff are as follows. Defendant Stayhealthy, Inc. (Stayhealthy) "has created an integrated suite of health assessment and monitoring devices capable of monitoring caloric expenditure and body fat composition of individuals and storing the information retrieved by the monitoring devi[c]es on a Web-based platform." (Amended Compl. ¶ 10). Defendants Dean A.

Monco (Monco) and John S. Mortimer (Mortimer) are shareholders of Stayhealthy and are attorneys

with the law firm of Wood, Phillips,

Katz, Clark & Mortimer.  (Id. ¶ 2-4.) Defendant John Collins (Collins) is Stayhealthy's chief executive

officer and largest shareholder.  (Id. ¶ 6.) In February 2002, Stayhealthy entered into an agreement

with AmerisourceBergen Drug Corporation (ABC) to distribute Stayhealthy products.  (Id. ¶ 19.)

Stayhealthy borrowed money from Petters Company, Inc. (Petters) to fund the manufacture of devices

ordered by ABC.  (Id. ¶ 27.)  Various disputes arose between Stayhealthy and ABC, and ABC

terminated its agreement with Stayhealthy.  (Id. ¶ 48.)  Stayhealthy retained legal counsel to commence

a lawsuit against ABC but Petters instructed Stayhealthy otherwise.  (Id. ¶¶ 50-52.)  Petters informed

Stayhealthy that Petters would sue Stayhealthy and then Stayhealthy should bring a crossclaim against

ABC.  (Id. ¶ 52.)  Plaintiff alleges Defendants Monco and/or Mortimer were aware of this "friendly

lawsuit" strategy.  (Id. ¶ 53.)

On April 17, 2003, Stayhealthy was served with Petters' Complaint.  (Id. ¶ 54.)  Stayhealthy

retained Skolnick & Associates, P.A. (Skolnick) to represent it in the Petters' action.  (Id. ¶ 55.)

Skolnick later threatened to withdraw as counsel.  (Id. ¶ 61.)  In response, on October 21, 2003,

Stayhealthy executed an agreement with Hannah Logan and Company (HLC) (hereafter "October

2003 Agreement" or "Agreement")  (Id. ¶ 64.)  According to Plaintiff, "Hannah Logan is a Nevada

limited liability corporation comprised of Stayhealthy shareholders used solely for the purpose of

protecting their interests in Stayhealthy by providing it with the resources needed to avert a default

judgment due to ABC's then pending motion to dismiss Stayhealthy's crossclaims, avert the

consequences of Skolnick's (then) imminent withdrawal at the beginning of a lengthy series of discovery

2

depositions, and/or to otherwise continue to pursue Stayhealthy's claims in the [Petters'] litigation."

(Id. ¶ 63.)  The October 2003 Agreement is reprinted below.

## AGREEMENT

**THIS AGREEMENT**, made this 21st day of October, 2003, by and between Stayhealthy, Inc. of 222 East Huntington Dr., Monrovia, CA 91016 ("Stayhealthy") and Hannah Logan and Company, LLC ("HLC") a Nevada limited liability corporation.

### RECITALS:

A.      Stayhealthy believes that i[t] has various legal claims against certain entities including Petters Group of Minneapolis, MN, AmerisourcBergen Corporation of Valley Forge, PA and Skolnick & Associates of Minneapolis, MN;

B.      Stayhealthy's current legal counsel, Skolnick & Associates, has threatened to withdraw from representing Stayhealthy in a lawsuit filed earlier this year by Petters Group against Stayhealthy and Stayhealthy has insufficient funds to pay for ongoing legal representation in these matters;

C.      In the absence of legal representation, Stayhealthy would lose by default in its lawsuit with Petters Group and would lose its cross claims against AmerisourceBergen;

D.      In consideration of HLC providing the necessary financial and consulting support, the receipt and sufficiency of which is hereby acknowledged by Stayhealthy, Stayhealthy agrees to assign to HLC 50.0% of its right, title and interest, in and to any and all recovery by Stayhealthy, through suit, arbitration, settlement or otherwise, from all of its causes of action arising against Petters Group, AmerisourceBergen and Skolnick & Associates as commenced in Federal Court, Minnesota, or such other court which may have jurisdiction in this matter;

E.      Stayhealthy hereby agrees to HLC engaging Robert Gardner, an attorney practicing in Minnesota, as legal counsel to represent Stayhealthy's interests in theses matters and agrees to pay Robert Gardner $10,000 immediately to commence work on the case, after payment of which HLC shall be responsible for all future fees and expenses payable to Robert Gardner.  Stayhealthy also agrees to assign to Robert Gardner 25.0% (in addition to the 50% assigned to HLC) of its right, title and interest, in and to any and all recovery by Stayhealthy, through suit, arbitration, settlement or otherwise, from all of its causes of action arising against Petters Group, AmerisourceBergen and Skolnick & Associates as commenced in Federal Court, Minnesota.  Any fees and expenses advanced and paid to Robert Gardner shall be deducted from any payments due to Robert Gardner as a result of this assignment of interest;

F.      In the event that the case is moved outside Minnesota's jurisdiction and Robert Gardner is unable to continue to represent Stayhealthy's interests, this assignment of the 25% interest in any recovery shall terminate and no further fees shall be

payable to Robert Gardner.  HLC shall be responsible for incorporating these terms into a separate agreement to be entered into between HLC and Robert Gardner;

G.      A settlement proposal is currently before Petters Group and AmerisourceBergen, as submitted on or around October 17, 2003.  In the event that this settlement is accepted by both Petters Group and AmerisourceBergen, leading to the withdrawal of all claims between these parties, Stayhealthy and HLC agree to terminate this Agreement and Stayhealthy agrees to pay HLC up to $150,000 from the proceeds of such settlement to cover financial and consulting support up to the time that such a settlement proposal is finalized.  As of the date of signing this Agreement, no further settlement proposals, or counter proposals, may be offered by Stayhealthy without prior acceptance by HLC;

H.      The parties hereto wish to confirm Stayhealthy's obligations under the Payment Obligation and Litigation Obligation as well as the Assignment by this Agreement;

**NOW THEREFORE**, for valuable consideration, the receipts and sufficiency of which is hereby acknowledge[d], the parties hereto agree as follows:

## SECTION 1
## PAYMENT OBLIGATION

Stayhealthy agrees to pay Robert Gardner $10,000 immediately.

## SECTION 2
## ASSIGNMENT AND LITIGATION OBLIGATION

Stayhealthy hereby acknowledges the terms of this Assignment of its rights, title and interest, in and to any and all recovery by Stayhealthy, through suit, arbitration, settlement or otherwise, from all of its causes of action arising against Petters Group, AmerisourceBergen and Skolnick & Associates and agrees to this Litigation Obligation and agrees to pay all sums owing under said obligation to HLC and to Robert Gardner.

## SECTION 3
## GENERAL PROVISIONS[1]

**Section 4.01.** Entire Agreement.  This Agreement and any subsequent written modifications thereto, represent the entire agreement between the parties concerning the subject matter herein and supersedes any and all prior oral or written agreements and communications between the parties with regard thereto.

**Section 4.02.** Modification and Waiver.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by each party.  No waiver of any of the provisions of this Agreement shall be deemed to be or shall constitute a continuing waiver.  No waiver shall be binding unless expressed as such in a document executed by the party making the waiver.

---

[1] The subsections of "Section 3" are reprinted as in the exhibit submitted to the Court.  The subsections appear to be erroneously numbered as if parts of a nonexistent "Section 4."

**Section 4.03.** Further Assistance.  At any time or from time to time, either party will, at the request of the other party and at such other party's expense, execute and deliver any further instruments or documents and take all such further action as such party reasonably may request in order to consummate and make effective transactions contemplated by this Agreement.

**Section 4.04. Severability.**  If any provision hereof is held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision will be of no force and effect, but the illegality or unenforceability will have no effect upon and will not impair the enforceability of any other provision of this Agreement.

**Section 4.05. Governing Law and Dispute Resolution.**  This Agreement shall be governed by the law of the state of Minnesota and any dispute hereunder shall be venued in Hennepin County District Court.  Each party waives any claim or defense in any action or proceeding relating to the subject matter of this Agreement based on any alleged lack of personal jurisdiction, improper venue or forum non conveniens or any similar basis.

**WHEREFORE**, this instrument has been duly executed effective the first date above written above.

John Collins for and on behalf of Stayhealthy, Inc.

AND

Brent A. Johnson for and on behalf of Hannah Logan and Company, LLC

(Gardner Aff. Ex. 3.)[2]

On October 21, 2003, Stayhealthy terminated Skolnick and Plaintiff commenced representing

Stayhealthy in the Petters' litigation.  (Id. ¶ 67.)  On March 10, 2004, Stayhealthy's board of directors

unanimously consented to a board resolution which affirmed the October 2003 Agreement and

---

[2] "Although not addressed by the Eighth Circuit, other circuits have determined that where a plaintiff chooses not to attach to the complaint, or incorporate by reference, a document upon which it relies, and is integral to the complaint, the defendant may produce such document in support of a motion to dismiss." Brogren v. Pohlad, 933 F. Supp. 793, 798 (D. Minn. 1995) (citing Second Circuit and other cases in support).  Here, Plaintiff attached the October 2003 Agreement as an exhibit to his affidavit.  Because the Court considers the document integral to the Amended Complaint, the Court does not consider review of this document to require conversion of Defendants' Federal Rule of Civil Procedure 12(b)(6) motion to a motion for summary judgment.

5

purportedly waived any potential conflicts of interest concerning Plaintiff's role as defined in the

Agreement.  (Id. ¶ 70.)  In late April 2004, Stayhealthy retained the law firm of Novack & Macey,

LLP at an hourly rate to replace Plaintiff as lead counsel representing Stayhealthy in the Petters-

Stayhealthy litigation.  (Id. ¶ 73, 75, 76.)

      On March 25, 2005, during a conference call, Defendants Monco and Mortimer, according to

Plaintiff, "voiced their intention to 'challenge' the enforceability of both the October 2003 Agreement

and the March 2004 Board Resolution, and, in particular, the provisions therein regarding payment to

HLC and/or Plaintiff."  (Id. ¶ 84.)  According to Plaintiff, Defendants Monco and Mortimer's "conduct

in 'challenging' the enforceability" of the Agreement "created an actual conflict of interest requiring

Plaintiff's withdrawal as counsel."  (Id. ¶ 87.)  On April 5, 2005, concurrent with notifying Stayhealthy,

HLC, and Collins of his intention to withdraw as their counsel, Plaintiff filed a Notice of Attorney's Lien

in federal court.  (Id. ¶ 88.)  On April 27, 2005, Plaintiff filed his Motion to Withdraw as

Stayhealthy/Collins' counsel in the Petters-Stayhealthy litigation.  (Id. ¶ 91.)

      In April 2005, Plaintiff sued Defendants in Minnesota state court.  (Id. ¶ 92.)  In May 2005,

Plaintiff served Defendants with his Amended Complaint in the same action.  (Doc. No. 1 at Ex. 4.)

Plaintiff's Amended Complaint contains seven counts.  Count I charges that Monco, Mortimer, and

their firm tortiously interfered with Plaintiff's rights under the October 2003 Agreement and the March

2004 board resolution (Id. ¶¶ 98-103) and Count II charges they conspired with each other to commit

the interference (Id. ¶¶ 104-106).  Count III charges Stayhealthy and Collins with breach of the

October 2003 Agreement and the March 2004 board resolution.  (Id. ¶¶ 107-111.)  Count IV charges

that promissory estoppel should apply to estop Stayhealthy and Collins from fulfilling their promises to

Plaintiff.  (Id. ¶¶ 112-118.)  Count V charges that equitable estoppel should apply to estop Stayhealthy and Collins from fulfilling their promises to Plaintiff.  (Id. ¶¶ 119-127.)  Count VI charges all of the named defendants with defrauding Plaintiff out of his rights to compensation under the October 2003 Agreement and/or the March 2004 board resolution (Id. ¶¶ 128-138), and Count VII charges Defendants conspired to defraud Plaintiff (Id. ¶¶ 139-141).

This case was removed from state court on May 20, 2005.  (Doc. No. 1) Plaintiff moves to remand the matter.  (Doc. No. 6.)  Defendants argue remand should be denied and move to dismiss the action, or, in the alternative, to strike multiple paragraphs of Plaintiff's Amended Complaint.  (Doc. No. 2.)

## II.    PARTIES' POSITIONS

### A.    Plaintiff's Motion to Remand

In support of his motion to remand, Plaintiff argues: (1) Stayhealthy and Collins expressly waived their right to remove this action because the October 2003 agreement forum selection clause provides disputes thereunder "shall be venued in Hennepin County District Court" (Pl.'s Mem. Supp. Remand at 14), and (2) Minnesota's long-arm statute confers personal jurisdiction over Defendants. (Id. at 14-18.)

Defendants first respond that the forum selection clause is void because the entire contract was void ab initio (from the beginning).  Defendants assert that the entire contract is void under the doctrine of champerty which bars intermeddling in a lawsuit by a stranger to the lawsuit.  (Defs.' Response Pl.'s Mot. Remand at 6-12.)  Here, Defendants argue, HLC is a stranger to the lawsuit because it is a separate legal entity from Stayhealthy and HLC agreed to fund the lawsuit in exchange for an

assignment of the recovery and the right to approve any settlement proposals.  (Id.)  Second, contend Defendants, Plaintiff submitted his claim for attorney's fees to the jurisdiction of this Court by filing a Notice of Lien in the Petters matter in federal court.  (Id. at 12-13.)  Third, Defendants argue that, even if not void, the entire agreement terminated either in April 2004 when HLC stopped paying Stayhealthy's attorney fees and Plaintiff commenced working on a flat fee project basis or in April 2005 when Plaintiff withdrew as counsel for Stayhealthy and Collins.  (Id. at 13-14.)  Fourth, Defendants argue that the forum selection clause cannot be applied because it only applies to Stayhealthy (not the other four named defendants), and its scope is not broad enough to cover Plaintiff's tort claims.  (Id. at 14-15.)  Finally, Defendants argue that even if the forum selection clause applies to some of the claims and to Stayhealthy, the Court has no power to remand the case because diversity jurisdiction exists over the remainder of the claims.  (Id. at 15.)

At oral argument, Plaintiff responded that HLC was not a stranger to the lawsuit but a corporation made up of Stayhealthy shareholders with the purpose of saving their Stayhealthy investments.  Moreover, according to Plaintiff, the HLC-Stayhealthy assignment agreement, even if void, should be severed pursuant to the express language of the severability clause in the contract leaving Plaintiff with a valid contingency-fee arrangement.  Plaintiff also argues that the April 2004 replacement of Plaintiff as lead counsel, HLC's withdrawal as funder of the litigation, and the Plaintiff-Stayhealthy flat-fee arrangement thereafter do not alter Stayhealthy and Collins' assignment obligations made to Plaintiff under the Agreement.  He further argues that his withdrawal in April 2005 was forced upon him by defendant attorneys turning the potential Stayhealthy-HLC/Plaintiff conflict of interest into an actual conflict of interest.  Plaintiff argues that the Court should deem Stayhealthy a citizen of

Minnesota by virtue of the forum selection clause, determine complete diversity is lacking, and remand the action.

### B.    Defendants' Motion to Dismiss

Defendants argue that the first three of Plaintiff's counts should be dismissed for failure to state a claim upon which relief may be granted because the October 2003 Agreement is void as violative of the doctrine of champerty, as recently reaffirmed by the Minnesota Court of Appeals in Johnson v. Wright, 682 N.W.2d 671 (Minn. Ct. App. 2004). (Defs.' Mem. Supp. Mot. Dismiss at 17.) Defendants further assert that Plaintiff, by withdrawing as lead counsel and accepting a flat fee in April 2004 and withdrawing entirely in April 2005, if entitled to any compensation at all, is entitled only to quantum meruit recovery. (Id. at 17-18.) Defendants also charges that Plaintiff forfeited his right to attorney fees because he breached his fiduciary duty to Stayhealthy and Collins by: not counseling them as to the champertous nature of the October 2003 Agreement, not disclosing to Stayhealthy the terms of a separate agreement with HLC, engaging in a conflict of interest without proper disclosure, and disclosing privileged information. (Id. at 24.) Moreover, Defendants argue that Plaintiff has failed to set forth sufficient factual allegations to meet the elements of his tortious interference, conspiracy to tortiously interfere, fraud, conspiracy to commit fraud, promissory estoppel, and equitable estoppel claims. (Id. at 25-33.)

Plaintiff counters that while the Minnesota Court of Appeals reaffirmed the doctrine of champerty in the Wright case, the Minnesota Supreme Court granted review of the appeals court's decision suggesting the doctrine might soon be extinguished in Minnesota. (Pl.'s Response Defs.' Mot.

Dismiss at 18.)[3]  Plaintiff counsels this Court to certify the question for review to the Minnesota Supreme Court.  Plaintiff also asks this Court to consider why the parties would have chosen to apply Minnesota law (as selected in the choice of law clause in the Agreement) if they had known it would void their efforts to have HLC pay for the Stayhealthy attorney fees in the Stayhealthy-Petters litigation. Plaintiff argues, without citation to case law, that, if the entire contract is void, Nevada or California law should apply and contends that the contract would not be void under either state's law.[4]  Plaintiff also argues that if the contract is void, promissory estoppel should still apply to enforce the assignment promised to Plaintiff in the October 2003 Agreement (Id. at 19) or equitable estoppel should apply to correct the injustice that would otherwise result (Id. at 19-20).  As to the breach of fiduciary duty attack leveled by Defendants, Plaintiff counters that he met the letter of the law with regard to his professional responsibility obligations.  Finally, Plaintiff contends that he has met the pleading requirements on all of his counts and is entitled to survive Defendants' dismissal motion.  (Id. at 20-22.)

III.    DISCUSSION

    A.    Plaintiff's Motion to Remand

    A district court must remand a case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. In re Bus. Men's Assurance Co ., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam).  When reviewing a

_____

        [3] Defendants reply that the Wright litigation was dismissed prior to a decision by the Minnesota Supreme Court.  (Defs.' Reply at 5.)

        [4] See Part III.B.5 herein for further discussion of this assertion.

motion to remand, a court must resolve all doubts concerning federal jurisdiction in favor of remand.
Id.

A diversity action cannot be removed to federal court if any defendant "is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).  In the instant action, Plaintiff, a citizen of Minnesota, argues that remand is necessitated because Defendant Stayhealthy is also a citizen of Minnesota by virtue of the forum selection clause in the October 2003 Agreement between Stayhealthy and HLC.  Assuming for the moment that the forum selection clause is valid, the Court finds that the clause binds Stayhealthy and HLC to venue disputes arising under the contract in state court in Hennepin County, Minnesota.  Furthermore, assuming that Plaintiff is a third party beneficiary under the Agreement, Plaintiff arguably has the right to enforce the forum selection clause against Stayhealthy.

Plaintiff's suit, however, extends far beyond the scope of the forum selection clause.  The forum selection clause encompasses "any dispute hereunder" (Gardner Aff. Ex. 3, Section 4.05 (emphasis added)) raised by the parties to the Agreement.  Count I (tortious interference) and Count II (conspiracy) of Plaintiff's Amended Complaint are leveled exclusively at Monco, Mortimer, and their firm.  (Amended Compl. ¶¶ 98-106.) Plaintiff's Amended Complaint alleges that Monco and Mortimer are residents of Illinois and that their firm is comprised of lawyers practicing law in Illinois.  (Id. ¶¶ 2-4.) Plaintiff does not dispute that these three defendants are citizens of Illinois and of diverse citizenship from him.  Plaintiff concedes none of these defendants was a party to the Agreement.  "It goes without saying that a contract cannot bind a nonparty."  E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002).  Thus, Monco, Mortimer, and their firm are not bound by the forum selection clause.

Further, Count IV (promissory estoppel) would only be a valid cause of action in the absence of the Agreement (and its venue provision).  Count V (equitable estoppel) is an action in tort,[5] not contract, and, therefore, the forum selection clause is not applicable.

Count VI (fraudulent inducement), in addition to being leveled at four (of five) defendants not bound by the forum selection clause, attacks the contract itself and does not arise, therefore, under the agreement.  See e.g., Hoffman v. Minuteman Press Int'l Inc., 747 F. Supp. 552, 559 (W.D. Mo. 1990) (noting the forum selection clause there did not apply because "[t]he claim of fraudulent inducement . . . is an attack on the agreement itself and therefore does not arise under the agreement"). Count VII (conspiracy), fails for the same reasons.  In addition to being leveled at four (of five) defendants not bound by the forum selection clause, Count VII does not arise under the terms of the contract but instead alleges tortious acts.  Count III (where Plaintiff alleges breach of the payment scheme set forth in the Agreement) is the only count, then, that does arise under the contract.  But in alleging Count III, Plaintiff charges that Stayhealthy and Collins (not a party to the forum selection clause) breached the contract.  Plaintiff's Amended Complaint alleges that Collins resides in California. (Id. ¶ 6.)  Nothing in the record properly considered suggests that Collins is not a citizen of California.

The Court finds that Plaintiff's counts far exceed the scope of the forum selection clause both by naming defendants not subject to the clause and by charging liability for claims not within the scope

---

[5] Equitable estoppel, although similar in some respects to promissory estoppel which sounds in contract, is a tort because it requires proof of misrepresentation.  See Goldstick v. ICM Realty, 788 F.2d 456, 463 (7th Cir. 1986) (Posner, J.)

of the clause.  Under the circumstances presented here, the Court finds the forum selection clause

cannot be applied to the counts now before the Court.

In any case, regardless of the validity of the forum selection clause, Stayhealthy's alleged waiver

of its right to remove claims arising under the contract does not change Stayhealthy's <u>citizenship</u>.[6]  <u>See</u>

<u>e.g.</u>, <u>Dawson v. Fitzgerald</u>, 189 F.3d 477, 1999 WL 651413, at *1n.2, *3 (10th Cir. 1999) (noting

the diverse citizenship of the two parties, plaintiff a citizen of Illinois and defendant a citizen of

Connecticut despite finding the parties bound by a forum selection clause mandating venue in a

Colorado state court).    Stayhealthy is a citizen of Delaware and California.  (<u>See</u> Amended Compl. ¶

5.)  As noted above, the individual defendants are citizens of Illinois and California.  The law firm is a

citizen of Illinois.  Plaintiff is a citizen of Minnesota.  (<u>Id.</u> ¶ 1.)  The Court finds that none of the

defendants are citizens of the state in which this suit was brought, complete diversity exists, and remand

is not warranted pursuant to 28 U.S.C. § 1441(b).  Therefore, the Court recommends denying

Plaintiff's Motion to Remand (Doc. No. 6.)

### B.    <u>Defendant's Motion to Dismiss</u>

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the

complaint as true.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  All reasonable inferences

from the complaint must be drawn in favor of the nonmoving party.  <u>Hafley v. Lohman</u>, 90 F.3d 264,

266 (8th Cir. 1996).  Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can

---

[6] Defendants concede personal jurisdiction exists but personal jurisdiction and subject matter jurisdiction are distinct concepts.  Conceding personal jurisdiction does not change one's state of citizenship.

prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258

(8th. Cir. 1994). Although "the complaint must contain sufficient facts, as opposed to mere

conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor

Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), a court may dismiss "only if it is clear that no relief

can be granted under any set of facts that could be proved consistent with the allegations." Hishon, 467

U.S. at 73. In light of the above standard, the Court now turns to each of Plaintiff's counts as alleged in

his Amended Complaint.

### 1.    Tortious Interference Count

In order to establish a prima facie case of tortious interference with contract, a plaintiff must

show: (1) the existence of a contract; (2) knowledge of the contract by the alleged wrongdoer; (3)

intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused

by the breach. Furlev Sales & Assoc., Inc., v. N. Am. Auto. Warehouse, Inc., 325 N.W.2d 20, 25

(Minn. 1982).

Plaintiff alleges that Monco, Mortimer, and their firm "provided legal counsel to Stayhealthy."

(Amended Compl. ¶¶ 2-4.) Plaintiff further alleges they "tortiously interfered with HLC and Plaintiff's

rights [under the October 2003 Agreement and/or March 2004 Board Resolution], induced

Stayhealthy/Collins' breach of obligations thereunder, 'froze' HLC and Plaintiff out of settlement

negotiations; created an 'actual' conflict of interest requiring Plaintiff's withdrawl as counsel; and/or

procured Stayhealthy/Collins' "termination" of Plaintiff's services." (Id. ¶ 101.)

> [A]n attorney acting within the scope of his employment as attorney is immune from liability
> to third persons for actions arising out of that professional relationship. This immunity, to
> be sure, may not be invoked if the attorney, exceeding the bounds of this unique agency

> relationship, either is dominated by his own personal interest or knowingly participates with
> his client in the perpetration of a fraudulent or unlawful act.

McDonald v. Stewart, 182 N.W.2d 437, 440 (Minn. 1970).  At oral argument, Plaintiff asserted that

the attorney defendants acted outside the scope of their employment by, inter alia, interfering with

Plaintiff's right to additional renumeration.  Other than conclusory allegations, however, the Court finds

that the Complaint lacks sufficient factual allegations that the attorney defendants or their firm acted

outside of the scope of their employment.  Thus, the Court finds that Monco, Mortimer, and their firm

are immune from the liability alleged in Plaintiff's tortious interference count.

Moreover, even in the absence of such immunity, Plaintiff's tortious interference count fails to

state a claim upon which relief may be granted as violative of the doctrine against champertous

agreements.  Champerty is "[a]n agreement between a stranger to a lawsuit and a litigant by which the

stranger pursues the litigants claims as consideration for receiving part of any judgment proceeds."

Johnson v. Wright, 682 N.W.2d 671, 675 (Minn. Ct. App. 2004) (quoting Black's Law Dictionary

224 (7th ed. 1999)).  As explained by the Minnesota Supreme Court, the law against champerty, dates

back to early English statutes.

> the essential principle upon which these statutes proceeded, and the evils and abuses at
> which they were aimed, are as old as human society, and will continue as long as human
> society exists.  The general purpose of the law against champerty and maintenance was to
> prevent officious intermeddlers from stirring up strife and contention by vexatious or
> speculative litigation which would disturb the peace of society, lead to corrupt practices,
> and pervert the remedial process of the law.  The principle upon which it proceeded was
> that contracts conducive of such results were against public policy.

Huber v. Johnson, 70 N.W. 806, 807 (Minn. 1897), quoted in Holland v. Sheehan, 122 N.W. 1, 3

(Minn. 1909).

In Johnson v. Wright, without fanfare, the Minnesota Court of Appeals affirmed that the doctrine against champertous agreements is alive and well in the State of Minnesota. In Wright, Jill Wright sued her former employer. Id. at 674. "Because [Wright] could not afford her attorney's retainer fee . . . Brent Johnson, through his business Money Changer LLC (MC), agreed to financially assist appellant with her litigation" in consideration of which Wright assigned to Johnson "a total of 27.7% of her right, claim and interest in and to any and all recovery by her, through suit, arbitration, settlement or otherwise, from all of her causes of action arising" against her former employer. Id. Wright also executed a promissory note payable to MC as security for MC's loan to Wright. Id. Under the terms of the agreement, Johnson had no control over Wright's legal matters. Id. at 677. After a thorough analysis of the admittedly few Minnesota Supreme Court cases on the subject in the last 110 years, the Minnesota Court of Appeals held that, despite the presence of the note and Wright's ability to control the litigation, the assignment was champertous. Id. at 678. The court concluded that "because [MC's] recovery is tied to the outcome of the litigation, the . . . agreement is champertous." Id. In so holding, the court specifically rejected Johnson's argument that Minnesota should abandon the doctrine against champerty in light of its abandonment in other states: "we do not presume to abandon the champerty doctrine simply because a few states have chosen to do so." Id. at 680.

The Agreement here, at Recital G, goes beyond the intermeddling involved in Wright and allows HLC, a distinct and separate corporate entity, to veto a settlement offered by Stayhealthy, the named party in interest in the underlying litigation. Thus, the Court finds that upon the application of Minnesota law, as required under the Agreement's Section 4.05, the HLC-Stayhealthy financing and assignment arrangement is champertous.

16

The question remains whether the champertous language can be severed so that Plaintiff's alleged contingent-fee arrangement survives. The answer is no. The Court finds that each "section" of the Agreement is a whole, indivisible "provision" of the Agreement. The "provision" that fails upon application of Minnesota law is Section 2, entitled, "Assignment and Litigation Obligation." This section addresses in a single paragraph how HLC and Plaintiff are to be paid and incorporates by reference Recitals D, E, F, and G of the Agreement. The text of the Agreement premises Plaintiff's engagement as counsel for Stayhealthy on HLC's obligation to pay Plaintiff's future fees and expenses and this obligation is in turn dependent upon HLC receiving a piece of the recovery <u>and</u> a settlement veto. Given the above, the Court determines that the portion of the Agreement that addresses Plaintiff's alleged fee arrangement is inextricably intertwined with HLC's champertous arrangement and cannot be severed. As a result no contract existed between Plaintiff and Stayhealthy (or Collins to the extent he was a party to the contract). It is axiomatic that one cannot tortiously interfere with a contract in the absence of a contract. <u>Zeitz v. Michel</u>, 181 N.W. 106 (Minn. 1921) (per curiam); <u>Aslakson v. Home Sav. Assoc.</u>, 416 N.W.2d 786 (Minn. Ct. App. 1987).

Additionally, even if the relevant provision was not void, the Court finds that Plaintiff's factual allegations that the attorney defendants "voiced their intention to 'challenge' the enforceability of the Agreement" (Amended Compl. ¶ 84) does not rise to the level of intentional procurement of the contract's breach. Finally, such a breach would lead to damages in quantum meruit, see <u>Trenti, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd. v. Nartnik</u>, 439 N.W.2d 418, 420 (Minn. Ct. App. 1989), not the type of damages sought here by Plaintiff (which are inextricably

17

intertwined with a champertous bargain).  Plaintiff does not appear to allege that Stayhealthy failed to

pay him his due under their flat-fee arrangement.  Thus, Plaintiff's claim also fails for lack of damages.

### 2.      Conspiracy Count

Plaintiff further alleges that the attorney defendants and their firm conspired to tortiously

interfere with the Agreement.  As discussed above, the allegations set forth in Plaintiff's Amended

Complaint do not state a cause of action for tortious interference with contract by the attorney

defendants.  Therefore, Plaintiff's conspiracy count also fails. See Zietz, 181 N.W. at 106.

### 3.      Breach of Contract Count

This count fails for a number of reasons.  First, as discussed above, the relevant provisions of

the Agreement are void as against public policy and no subsequent board resolution or other agreement

can revive such provisions.  Second, to the extent it was a valid contract, HLC terminated the contract

when, in April 2004, it ceased paying Stayhealthy's litigation costs and Plaintiff terminated the

agreement by no longer serving as lead counsel in the matter and agreed to a flat-rate arrangement with

Stayhealthy and/or, in April 2005, when Plaintiff withdrew from representing Stayhealthy.  Trenti, 439

N.W.2d at 420.  Any conflict of interest that arose via a Stayhealthy challenge to the October 2003

Agreement was foreseeable and any obligation under the contract ceased upon withdrawal.

### 4.      Promissory Estoppel Count

Application of promissory estoppel requires a showing that (1) there was a clear and definite

promise; (2) the promisor intended to induce reliance and such reliance occurred; and (3) the promise

must be enforced to prevent injustice.  Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142,

152 (Minn. 2001).  Here Plaintiff alleges promissory estoppel in the alternative in the event the Court

18

strikes his breach of contract claim.  But Plaintiff's promissory estoppel claim relies on the promises

contained in the October 2003 Agreement (and its reaffirmation in the March 2004 Board Resolution).

(Amended Compl. ¶¶ 112-118.)  The Court has determined that a contract was formed but is void as

against public policy.  The public policy against champertous agreements in contract also bars Plaintiff

from stating a claim based upon the same agreement under a promissory estoppel theory.

### 5.      Equitable Estoppel Count

There are five elements to an equitable estoppel claim:

(1) There must be a misrepresentation of a material fact;
(2) The party to be estopped must be shown to have known that the representation was false;
(3) The party to be estopped must have intended that the representation be acted upon;
(4) The party asserting the estoppel must not have had knowledge of the true facts; and
(5) The party asserting the estoppel must have relied upon the misrepresentation to his detriment.

Transamerica Ins. Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978).[7]

Plaintiff seeks to estop Defendants from denying Plaintiff the fruit of his bargain.  Again, such

equitable relief is not warranted given the public policy against champertous agreements.  The Court

---

[7] Like the Court, Plaintiff also cites Minnesota law as the controlling law when arguing his equitable estoppel claim should survive Defendants' motion to dismiss.  (Pl.'s Response Defs.' Mot. Dismiss at 19-20.)  As noted herein, an equitable estoppel claim is a tort because it requires proof of misrepresentation.  See Goldstick v. ICM Realty, 788 F.2d 456, 463 (7th Cir. 1986) (Posner, J.) Despite arguing at oral argument (without citation to any case law) that California or Nevada law would apply if the contract were void, Plaintiff's briefs only cite Minnesota law, including when discussing his equitable estoppel tort claim, which would arguably fall outside the purview of the choice of law clause in the October 2003 Agreement.  Given Plaintiff's failure to cite any case law supporting a different choice of law application and given his reliance on Minnesota law, the Court applies Minnesota law.

finds that Plaintiff's alleged contingency-fee claim cannot be separated from the void agreement given the nature of the bargain—between Stayhealthy and HLC—as alleged by Plaintiff.

### 6.       Fraud Count

Under Minnesota law, the elements of fraud include: 1) a false representation of a material fact; 2) knowledge of the falsity of the representation or assertion of the material fact as true without knowledge of whether it was true or false; 3) intent to induce reliance; 4) actual reliance; and 5) damages as proximate cause of the misrepresentation. Evertz v. Aspen Med. Group, 169 F. Supp. 2d 1027, 1030 (D. Minn. 2001).

Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with particularity. At a minimum, plaintiffs must plead the "time, place and contents of the false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir.1995). Plaintiff bears these specific obligations for each defendant; group allegations do not suffice. See DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). "Where 'allegations of fraud are explicitly or . . . implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief.'" Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997) (citation omitted).

Plaintiff's fraud claims are not pled with particularity. In particular, a number of Plaintiff's allegations in support of his fraud claims are premised on "information and belief" without providing the source of the information or the reasons for the belief. (See e.g., Amended Compl. ¶¶ 56-57, 65-66,

71, 75-77, 97.)  Given the lack of particularity in his allegations, the Court finds that Plaintiff has not

stated a fraud claim upon which relief may be granted.

Further, as discussed above, the contract language central to Plaintiff's fraud claim fails because

it cannot be separated from the contract language stricken as against public policy.  Therefore,

Plaintiff's fraud claim also fails.

### 7.        Conspiracy Count

Plaintiff also alleges that Defendants conspired to defraud him.  (Amended Compl. ¶¶ 139-

141.)  Because the Court finds Plaintiff's fraud claim does not state a claim upon which relief may be

granted, Plaintiff's conspiracy to defraud also fails.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1.        Plaintiff's Motion to Remand (Doc No. 6) be **DENIED**;

2.        Defendants' Motion to Dismiss (Doc. No. 2) be **GRANTED**; and

3.        All of Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Dated: November 16, 2005

   s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by <u>December 5, 2005</u> a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.